## Tourison v. Balka et al.

*Gilbert P. High*, for plaintiff.

*Julian W. Barnard* and *James N. Peck*, for defendants.

KNIGHT, P. J., June 17, 1955.—The facts as averred in the complaint can be briefly stated as follows.

Plaintiff, a builder, on August 21, 1951, entered into a written contract with defendant, Balka, by the terms of which plaintiff agreed to build a private residence for the sum of $25,972. Balka was the agent and nominee of defendants, Hall and Knatz. The money to finance the building was advanced by or deposited with the Colonial Title Surety Company of Philadelphia.

Plaintiff completed the residence in accordance with the plans and specifications as changed in some respects by the orders of defendants Hall and/or Knatz. Plaintiff also at the instance and request of defendants Hall and/or Knatz furnished certain materials and performed certain work as extras. The extras are enumerated in the complaint and amount, less credits, to the sum of $12,238.73. The contract price plus the extras amount to $38,210.73, and plaintiff has been paid $28,555.49, leaving a balance due plaintiff of $9,655.24 for the recovery of which this suit was brought.

Certain portions of the written agreement between plaintiff and Balka are relevant to the questions now before us for decision. They are:

"It is understood and agreed that no extra charge or claim shall be made for any work done upon, or for materials furnished or supplied for the said buildings, whether called for in this contract or not, unless an agreement with respect thereto shall have been first reduced to writing and signed by the parties hereto, and be approved by the said Surety Company, and when extra work or materials are so ordered, the agreement in reference to the same shall be considered a separate and distinct contract, in no way altering or affecting the terms of this contract, the amount agreed upon to be paid in the same way and manner

and subject to the same terms and conditions (including the waiver of the right of lien) as have been made as to the payment of the original contract price, unless otherwise agreed in writing."

"And it is further understood and agreed in the event of any dispute under the terms of this contract, Colonial Title Surety Company shall have the right to decide whether such dispute shall be arbitrated under the provisions of this contract or in accordance with the procedure adopted by the American Institute of Architects and contained in the current standard agreement approved by that Institute. It is understood and agreed, however, that the rights herein described are in addition to those prescribed in this contract and not in substitution thereof."

"It is hereby further mutually covenanted, promised and agreed, by and between the said parties, that in the event of any dispute or disagreement hereafter arising between them as to the character, style or portion of the work on said buildings to be done, or materials to be furnished under this contract, or the plans and specifications hereinbefore referred to, or as to any amount due to the party of the second part or any other matter in connection herewith, the same shall be referred to the officer of the Surety Company, whose decision shall be final and binding upon them."

Defendants, Hall and Knatz, filed preliminary objections to the complaint. These objections will be discussed later in this opinion.

Defendants, Hall and Knatz, then presented a petition on which a rule was allowed on plaintiff to show cause why arbitration should not be proceeded with. A responsive answer was filed by plaintiff, depositions were taken and the case argued before the court en banc.

The first preliminary objection is that the complaint fails to state whether the orders or contracts for extras were oral or in writing. This objection is well taken.

The second preliminary objection is that the complaint fails to aver that the extra work was done and the extra material furnished by virtue of written contracts as required by the agreement of August 21, 1951, a copy of which is attached to the complaint and made part of plaintiff's case.

If, as we are given to understand by plaintiff's brief, the orders or contracts for extra work were in most cases oral then the complaint shows on its face that plaintiff could not recover. That such covenants and conditions in a building contract may be waived either expressly or by the conduct of the parties is well established in the law of Pennsylvania.

We are of the opinion, however, that if the orders for extra work were oral, then there should be an averment that the conditions of the written contract were waived by the parties. This we believe is more than evidence; it is a condition precedent to the recovery for the extras.

The first and second preliminary objections are sustained and leave granted plaintiff to file an amended complaint within 20 days.

The third preliminary objection has to do with the arbitration clauses in the written contract and will be discussed with the rule to show cause why arbitration should not be proceeded with.

An examination of the written contract shows that it was prepared by the Colonial Title Surety Company in the interest of and for the protection of the surety company. The complaint avers that the contract was substantially completed and plaintiff received the entire contract price before the great majority of the extra work was performed. These facts must be borne in mind when we come to consider what was the intention of the parties as expressed in the arbitration clauses of the contract.

These clauses provide that in the event of a dispute under the terms of *this contract*, the surety company

shall have the right to decide whether the dispute shall be arbitrated under the terms of the contract, that is, by an officer of the surety company whose decision shall be final, or in accordance with the procedure adopted by the American Institute of Architects and contained in the current standard agreement approved by the institute.

It will thus be seen that before any arbitration can be had the surety company must by some affirmative declaration declare by which of the two methods it was to be conducted. No such declaration or decision has been made by the surety company. While Mr. Hall testified that Mr. West, an officer of the surety company, was willing to act as an arbitrator, this is not a declaration of the surety company that it elected to have the dispute arbitrated by Mr. West. On the other hand, plaintiff testified that Mr. Moon of the surety company told him the company would not arbitrate. The written agreement provides that any agreement as to extra work "shall be considered a separate and distinct contract in no way altering or affecting the terms of this contract".

The reason for this provision is apparent. The surety company only guaranteed that the residence would be built in accordance with the plans and specifications. It was not responsible for the performance of any extra work ordered by any of defendants, unless said work involved a change in the plans and specifications, in which case the change had to be approved in writing by the surety company. The arbitration clauses all refer to disputes arising under *"this contract"* for these were the only disputes the surety company was interested in. It therefore would seem that inasmuch as all contracts for extras were to be considered separate and distinct from the main contract that the arbitration clauses would not apply to contracts for extras unless the contracts for extras

were brought within scope of the arbitration clauses by the following language found in the clause in the written contract dealing with extras:

". . . the amount agreed upon to be paid in the same manner and subject to the same terms and conditions (including the waiver of the right of lien) as have been made as to the payment of the original contract price, unless otherwise agreed in writing."

It would seem that this only applies to the manner of payment or to the "amount agreed upon" in which case there would be no need of arbitration. If it was the intention of the parties that the arbitration clauses should apply to extra work they would have inserted this provision in the clause dealing with extra work just as they inserted the waiver of the right of lien.

After a careful study of the whole contract as well as the complaint and the items listed as extras, we have come to the conclusion that the arbitration clauses in the written contract do not apply to extra work performed or extra materials furnished.

The record discloses that no formal demand for arbitration was made by defendants until after this action was brought on May 7, 1954, which was approximately 18 months after the contract and extra work were completed.

The depositions show that efforts were made by the parties to settle the case and that there was some talk about arbitration. There is also evidence, conflicting it is true, that one of the defendants and his counsel declared there would be no arbitration.

The conflicting evidence on the subject as disclosed by the depositions, the long delay on the part of defendants in formally demanding that the dispute be arbitrated, all lead us to the conclusion that if the defendants ever had any right to have this dispute decided by arbitration under the terms of the written contract, they have waived it.

And now, June 17, 1955, the first and second preliminary objections are sustained and plaintiff allowed 20 days within which to file an amended complaint. The third preliminary objection is dismissed. The rule to show cause why the arbitration should not be proceeded with is discharged.